CIACCIO, Judge.
An unanimous jury of six persons found both defendants guilty as charged of having violated La.R.S. 14:106, obscenity. Defendants appeal based upon two assignments of error. We have considered defendants’ assignments of error and have also reviewed the record for errors discoverable by a mere inspection of the pleadings and proceedings, La.C.Cr.P. Art. 920(2), and for sufficiency of the evidence. We have found no error warranting reversal of defendants’ convictions. We, therefore, affirm.
FACTS
On May 11, 1983, a detective of the Vice Division of the New Orleans Police Department entered the Ciné Royale Theatre located at 912 Canal Street, New Orleans. For six ($6.00) dollars he purchased a ticket for admission.
Over a period of approximately one hour and forty minutes the detective viewed an entire film entitled “Pandora’s Mirror”. The film exhibited clearly visible close-up camera shots of the male and female genitals, the female breast nipples, public hair, anus, vulva, and the erected male penis. The film depicted males and females engaged in various acts, including sexual intercourse, fellatio, cunnilingus, masturbation and ejaculation.
After viewing the film the detective returned to his office and composed an application for a search warrant to search the theater and seize the film “Pandora’s Mirror”. The next day the detective presented the application to the criminal court magistrate. The magistrate issued an order of search.
Later that day three other Vice Division detectives executed the search warrant and seized the film “Pandora’s Mirror” which was being shown at the time of their search. After seizing the film the detectives arrested the cashier, defendant Mary Davis, and the projectionist, defendant Alvin Thomas.
ERRORS PATENT
We have inspected the pleadings and the record of the proceedings and have found no errors.
SUFFICIENCY OF THE EVIDENCE
We have conducted an independent review of the film, and have reviewed the evidence connecting these two defendants with the display of the film. As noted above, the film depicts “exposure of the genitals, public hair, anus, vulva, [and] female breast nipples.” La.R.S. 14:106A. (1). Additionally, the film depicts “hard core sexual conduct” as that term is defined by La.R.S. 14:106A.(2)(b)(i-v). The film was displayed in a public place; the portrayal of the hard core sexual conduct was for its own sake, and for ensuing commercial gain; the defendants participated in the presentation and display of the film. Further, applying contemporary community standards, the conduct depicted “taken as a whole, appeals to the prurient interest; ... is presented in a patently offensive way; and ... lacks serious literary, artistic, political, or scientific value”. La.R.S. 14:106A.(2)(a).
We find that the record contains sufficient evidence to prove every element of the offense beyond a reasonable doubt. We also find that any rational trier of fact could have found that every element of the offense charged was proven beyond a reasonable doubt. The record contains sufficient evidence to support the convictions of defendants.
ASSIGNMENT OF ERROR NUMBER ONE
By their first assignment of error defendants argue that the trial court erred by denying the Motion to Quash on the ground that La.R.S. 14:106 is unconstitutional. Defendants challenge that the statute is “vague, overbroad and ambiguous.” The crux of this challenge is that particular terms, viz., “contemporary community standards”, “prurient interest”, and “patently offensive”, are not defined with adequate precision.
*93 La.R.S. 14:106 has been held constitutional on numerous occasions. See State v. Walden Book Co., 386 So.2d 342 (La.1980); State v. Burch, 365 So.2d 1263 (La.1978); State v. Wrestle, Inc., 360 So.2d 831 (La.1978). The terms “contemporary community standards”, “prurient interest”, and “patently offensive” have been determined to be not so indefinite as to render the statute unconstitutional, because persons of ordinary intelligence could determine what conduct was regulated by the statute. This statute complies with state and federal constitutional requirements.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
By their second assignment of error defendants argue that the trial judge erred when he denied a motion for mistrial on the ground that the film had been broken and could not be shown to the jury in continuous unbroken fashion.
This film lasts approximately one hour and forty minutes. When it was seized the film was placed onto four reels. When shown to the jury, the film was shown from the four reels apparently with three “intermissions” as the projectionist changed reels.
First, we find that the viewing interruptions which apparently occurred while the projectionist changed reels would not have hampered the jury’s ability to assess the film as a whole. In fact, we viewed the film in this same manner.
Secondly, if the reels were not shown in their proper order (which defendants imply, but offer no indication of which order was used), then a different situation is presented. One task of the finder of facts is to determine whether the film taken as a whole lacks serious literary, artistic, political, or scientific value. Arguably this determination would be hampered if the film was not viewed in its proper order, or was not seen in its entirety.
There is no indication that the jury did not view the entire film, so there was no error in that regard. Likewise we find no error concerning any interruptions caused while the projectionist changed reels. If the film was not shown in its proper order, this would be error. Having viewed the film ourselves, however, we find that if this error occurred, it was harmless.
We have viewed the film and find that the jury could have easily evaluated the film “taken as a whole”, regardless of the order in which the scenes were viewed. Further, the prohibited display of “hard core sexual conduct” occurs throughout the film. Viewing the film in its proper order does not give it salvaging literary, artistic, political or scientific value.
While it may have been error to allow the film to be viewed out of order by the jury, in this case the error was harmless. Further, mistrial is a drastic remedy. The trial court did not err by denying the motion for mistrial, because nothing had occurred which might have prevented defendants from receiving a fair and impartial trial.
This assignment of error is without merit.
CONCLUSION
Having found no error in the proceedings in the trial court, the evidence sufficient to support the convictions, and no merit in the two assignments of error, we affirm the convictions of defendants.
AFFIRMED.