564 So.2d 345 (1990)
STATE of Louisiana
v.
Jennell HONORE.
No. 90-KA-22.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 1990.
Rehearing Denied August 17, 1990.
*346 John M. Mamoulides, Dist. Atty., John Molaison, Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of counsel), Office of the Dist. Atty., Gretna, for plaintiff-appellee.
Ronald J. Rakosky, A P.L.C., New Orleans, for defendant-appellant.
Before KLIEBERT, WICKER and GOTHARD, JJ.
KLIEBERT, Judge.
On the morning of June 24, 1988, Detective Ronald Coupel of the Kenner Police Department, while dressed in civilian clothes, conducted an investigation of alleged pornographic magazines for sale at the Airline Book Store in Kenner. He entered *347 the store, selected five magazines,[1] and handed them to the defendant, Mrs. Honore, who took his money and rang up the sale on the register. On returning to his office, Detective Coupel reviewed the magazines with other police personnel. Together they concluded the magazines depicted obscene sexual acts.
Subsequently, the defendant Honore was arrested and charged by bill of information with "violation of R.S. 14:106[2] in that she did exhibit and/or sell magazines containing hard core sexual conduct, to-wit: magazines." The defendant filed a motion to quash the bill of information based upon alleged selective prosecution by law enforcement officers. Following an evidentiary hearing on the motion to quash based on the alleged selective prosecution, the court denied it. There is no indication in the record that the trial judge ruled on the motion to quash based on the unconstitutionality of LSA-R.S. 14:106. Nevertheless, a trial was held and the defendant convicted of the crime as charged. The judge sentenced the defendant to one year in parish prison, fined her $1,000.00, and obligated her to pay certain court costs. The prison term was suspended and the defendant placed on one year active probation.
Thereafter, the defendant filed a motion for a new trial where the same defenses of selective prosecution and the unconstitutionality of LSA-R.S. 14:106 were again urged. The trial judge denied the motion for a new trial. Additionally, a motion for post verdict judgment of acquittal based on the insufficiency of the evidence was filed and denied by the court. The defendant brought this appeal.[3] We affirm the trial court.
*348 On appeal the defendant argues the trial court erred in denying (1) the motion to quash based on selective prosecution, (2) the motions to quash based on the unconstitutionality of LSA-R.S. 14:106, (3) the motion for post verdict judgment of acquittal based on inadequacy of the evidence, (4) the motion for a new trial, and (5) in refusing to give requested special charges to the jury.
As did the defendant in brief, we consider assignments of error (1) and (4) above enumerated together.

SELECTIVE PROSECUTION
In U.S. v. Jennings, 724 F.2d 436 (5th Fed.Cir.1984) cert. denied, Jennings v. U.S., 467 U.S. 1227, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984), the Court set forth the burden of proof on the defendant when the defense of selective prosecution is urged, to-wit:
"In order to prevail in a defense of selective prosecution, a defendant must meet two requirements which we have characterized as a `heavy burden.' United States v. Johnson, 577 F.2d 1304, 1308 (5th Cir.1978) (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir.1974). First, he must make a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. United States v. Tibbetts, 646 F.2d 193, 195 (5th Cir.1981). Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. Id. The showing of invidiousness is made if a defendant demonstrates that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination. United States v. Lichenstein, 610 F.2d 1272, 1281 (5th Cir.), cert. denied, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980)."
Further, the Louisiana Supreme Court in State ex rel. Guste v. K-Mart Corp., 462 So.2d 616, 620 (La.1985), as to selective prosecution said:
"A concept imbedded in our system of law enforcement is prosecutorial discretion. Prosecuting agencies have broad powers in deciding whether to institute a prosecution in a given case. However, as with any governmental power delegated to an agency or official, this discretion must not be used arbitrarily, capriciously, or maliciously, but rather must be used to further the ends of justice.
In the words of the United States Supreme Court, `the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.' In order to find such a violation, it must be shown that `the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). See also United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)."
In the present case there was no showing of arbitrary, capricious, or malicious prosecution. Further, there is absolutely no evidence that any alleged selective prosecution was based on an unjustifiable standard such as race, religion, or other arbitrary classification. The evidence submitted to the trial court showed Jefferson Parish authorities made a policy decision which treated video stores differently from book stores. However, the packaging of adult videos do not show "ultimate sexual acts" as do the covers of the magazines filed of record here. Therefore, considering an individual right of privacy (for example to view in the privacy of his home a sexually explicit video tape) and the *349 necessary proof of intent to obtain a conviction under LSA-R.S. 14:106(A)(3), the enforcing and prosecuting authorities have a valid basis for distinguishing magazines from video tapes in reaching policy decisions. Here the trial court did not err in denying the motion to quash or motion for new trial based on selective prosecution.
We next consider defendant's argument that LSA-R.S. 14:106 is unconstitutional in that it is vague, violates the equal protection clause, and violates an individual's right to privacy under the headings as indicated:

RIGHT TO PRIVACY
Defendant alleges that LSA-R.S. 14:106 unconstitutionally infringes on the right to privacy guaranteed by Article I, Section 5 of the Louisiana Constitution of 1974. More specifically, defendant argues that, as applied to the seller of magazines for private viewing, LSA-R.S. 14:106 functionally prevents the acquisition of presumptively obscene material for private use in one's home and constitutes an unconstitutional invasion of the right to privacy.
Defendant argues that because the Louisiana Constitution provides greater protection for individual rights than that provided by the Fourth Amendment of the U.S. Constitution, U.S. v. 12 200 Ft. Reels of Super 8 MM Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), is distinguishable and not controlling as a matter of State Constitutional Law. We disagree with defendant and believe the holding of the U.S. Supreme Court as stated at 413 U.S. at p. 126, 93 S.Ct. at p. 2668, is the controlling Louisiana Law:
"Claimant relies on the First Amendment and our decision in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). But it is now well established that obscene material is not protected by the First Amendment. Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), reaffirmed today in Miller v. California, 413 U.S. 15, at 23, 93 S.Ct. 2607, at 2614, 37 L.Ed.2d 419. As we have noted in United States v. Orito, 413 U.S. 139, at 141-143, 93 S.Ct. 2674, at 2677-2678, 37 L.Ed.2d 513, also decided today, Stanley depended, not on any First Amendment right to purchase or possess obscene materials, but on the right to privacy in the home. Three concurring Justices indicated that the case could have been disposed of on Fourth Amendment grounds without reference to the nature of the materials. Stanley v. Georgia, supra, 394 U.S., at 569, 89 S.Ct., at 1250 (Stewart, J., joined by Brennan and White, JJ., concurring).
In particular, claimant contends that, under Stanley, the right to possess obscene material in the privacy of the home creates a right to acquire it or import it from another country. This overlooks the explicitly narrow and precisely delineated privacy right on which Stanley rests. That holding reflects no more than what Mr. Justice Harlan characterized as the law's `solicitude to protect the privacies of the life within [the home].' Poe v. Ullman, 367 U.S. 497, 551, 81 S.Ct. 1752, 1781, 6 L.Ed.2d 989 (1961) (dissenting opinion).
* * * * * *
We are not disposed to extend the precise, carefully limited holding of Stanley to permit importation of admittedly obscene materials simply because it is imported for private use only. To allow such a claim would not be unlike compelling the Government to permit importation of prohibited or controlled drugs for private consumption as long as such drugs are not for public distribution or sale. We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others. United States v. Thirty-Seven Photographs, supra, 402 U.S., [363] at 376, 91 S.Ct., [1400] at 1408 [28 L.Ed.2d 822 (1971)] (opinion of White, J.), and United States v. Reidel, supra, 402 U.S., [351] at 355, 91 S.Ct., [1410] at 1412 [28 L.Ed.2d 813 (1971) ]. Nor is there any correlative right to transport obscene material in interstate commerce. United States v. Orito, supra, 413 U.S., [139] at *350 142-144, 93 S.Ct., [2674] at 2677-2678 [37 L.Ed.2d 513 (1973)]. It follows that Stanley does not permit one to go abroad and bring such material into the country for private purposes. `Stanley's emphasis was on the freedom of thought and mind in the privacy of the home. But a port of entry is not a traveler's home.' United States v. Thirty-Seven Photographs, supra, 402 U.S., at 376, 91 S.Ct., at 1408 (opinion of White, J.)." [Footnotes Omitted. Emphasis added].
Thus, although one may have the right to possess and view obscene material in the privacy of his home, this right does not equate to a right to acquire the obscene material.

DENIAL OF EQUAL PROTECTION
Defendant contends the exemption for prosecution set forth in LSA-R.S. 14:106(D), on its face, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. LSA-R.S. 14:106(D) provides:
"D. (1) The provisions of this Section do not apply to recognized and established schools, churches, museums, medical clinics, hospitals, physicians, public libraries, governmental agencies, quasi-governmental sponsored organizations and persons acting in their capacity as employees or agents of such organizations, or a person solely employed to operate a movie projector in a duly licensed theatre.
(2) For the purpose of this Paragraph, the following words and terms shall have the respective meanings defined as follows:
(a) `Recognized and established schools' means schools having a full time faculty and pupils, gathered together for instruction in a diversified curriculum.
(b) `Churches' means any church affiliated with a national or regional denomination.
(c) `Physicians' means any licensed physician or psychiatrist.
(d) `Medical clinics and hospitals' means any clinic or hospital of licensed physicians or psychiatrists used for the reception and care of the sick, wounded or infirm."
In State v. Luck, 353 So.2d 225 (La.1977), the Supreme Court addressed this identical issue, found LSA-R.S. 14:106(D) unconstitutional, but severed the unconstitutional portion from the remainder of the statute, declining to invalidate the statute as a whole. The legislature re-enacted LSA-R.S. 14:106 without substantially changing subsection D. Moreover, the severability clause was removed.
We are in agreement with our brethren of the Fourth Circuit that, as re-enacted, LSA-R.S. 14:106(D) remains unconstitutional and is severable notwithstanding the omission by the legislature of the severability clause. The constitutional portion of the statute is separately enforceable because it forms a complete act within itself and is susceptible of reasonable construction without the exemptions of subsection D. State v. Freeman, 544 So.2d 22 (4th Cir.1989).

VAGUENESS
Defendant contends that LSA-R.S. 14:106(A)(3)[4] is void for vagueness on constitutional grounds because it does not give adequate notice of what is or is not obscene and does not provide sufficiently specific guidelines for law enforcement officials.
Again, the Fourth Circuit addressed this exact issue in State v. Louisiana Toy Co., Inc., 483 So.2d 1264 (4th Cir.1986), writ denied, 488 So.2d 686 (La.1986), stating at page 1268:
"Louisiana's obscenity statute, like that of many other states, incorporates the precise language of Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 2615, 37 L.Ed.2d 419 (1973), in setting guidelines to be applied in the determination of obscenity. Aside from their unimpeachable source, the guidelines have withstood many constitutional attacks on the grounds of vagueness. See *351 for example, State v. Amato, 343 So.2d 698 (La.1977) and State v. Davis, 457 So.2d 91 (La.App. 4th Cir.1984), writ denied, 462 So.2d 206 (La.1985).
We do not believe that Kolender [v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903] [ (1983) ] announces a new rule which would require a reappraisal of the constitutionality of La.R.S. 14:106. Although different Supreme Court decisions naturally emphasize different aspects of the void-for-vagueness doctrine, the doctrine has long required that laws contain explicit standards for the officials who apply them. In the same year that the Supreme Court enunciated the Miller obscenity standard, it decided Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), rejecting a constitutional challenge to an anti-noise ordinance on the grounds of vagueness. The Court noted eleven of its decisions, dating back to 1937, which held that explicit guidelines for enforcement officials are necessary to prevent arbitrary and discriminatory enforcement of laws. 408 U.S. at 108 n. 4, 92 S.Ct. at 2299 n. 4. We must assume that the United State[s] Supreme Court decided Miller confident that those standards give explicit guidelines for officials to apply them in deciding whether material is obscene or not. Hence, we decline to now hold that Kolender overrules Miller by implication."
We therefore find defendant's argument in this respect is without merit.
We next consider the defendant's third assignment of error based on the inadequacy of the evidence.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781. 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 (5th Cir.1989).
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 (5th Cir. 1988), writ denied, 538 So.2d 1010 (La. 1989).
As to proof of obscenity, our Supreme Court at page 836 in State v. Wrestle, Inc., 360 So.2d 831, (La.1978), affirmed in part, reversed in part on other grounds sub nom Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), on remand, 371 So.2d 1165 (La.1979) said:
"Determination of guilt of obscenity constitutionally requires proof of scienter or knowledge. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). As the decision indicates, this proof may be circumstantial. The state need not, however, show the defendant knew the legal status of the materials to be obscene; it is sufficient that, under the statute, the state be required to show that the accused had knowledge of or had reason to know of the character and nature of the contents of the materials for distribution or exhibition of which he was responsible. Hamling v. United States, 418 U.S. 87, 119-25, 94 S.Ct. 2887, 2908-11 [41 L.Ed.2d 590] (1974); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Schauer, The Law of Obscenity 222-26 (1976)."
Here defendant participated in the public portrayal, for its own sake, and for ensuing commercial gain of magazines depicting ultimate sexual acts on the cover. LSA-R.S. 14:106(A)(2)(a), (b)(i) and (3). Further, in her voluntary statement given to police, defendant stated she was aware the bookstore sold soft core and hard core adult magazines that probably showed couples engaged in sexual acts. The two magazines *352 of record, S-1 and S-4, in fact show couples engaged in ultimate sex acts on the cover. See LSA-R.S. 14:106(A)(2)(b).
The testimony of record was that Detective Coupel brought the magazines, wrapped in clear plastic, to the check-out counter where defendant picked up the magazines, looked at the covers to determine their price, then charged Detective Coupel accordingly. Clearly, she became aware the magazines depicted hard core sexual conduct, at the latest, when Detective Coupel brought the items to the counter. Therefore, we find the state produced sufficient evidence for a rational trier of fact to have found defendant guilty as charged.
In her final alleged error (No. 5) defendant argues the judge erred in refusing to give requested special jury charges. The record before us does not contain the jury charges given by the trial judge nor do the minutes reflect an objection to the jury charges was made. Therefore, the alleged error is not properly before us on appeal. LSA-C.Cr.P. Article 801; State v. Issac, 527 So.2d 1045 (5th Cir.1988), writ denied, 532 So.2d 175 (La.1988).
For the foregoing reasons, we affirm defendant's conviction.
AFFIRMED.
NOTES
[1] According to the transcript, all five magazines were introduced in evidence, identified as S-1 thru S-5.
[2] In response to a motion for bill of particulars, the state responded that the specific section of LSA-R.S. 14:106 defendant violated was A(3) which provides in pertinent part as follows:

"A. The crime of obscenity is the intentional:
* * * * * *
(3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition, or display of obscene material, or the preparation, manufacture, publication, or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition, or display.
Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above, and (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value."
[3] Substantial portions of the record, transcript, and exhibits were missing from the record originally lodged in this Court. Additionally, the date on the transcript of testimony did not coincide with the dates on the minute entries and the court reporter made no effort to segregate the testimony taken on evidentiary hearings from that taken at the trial on the merits. Moreover, the court reporter transcribed the testimony as though it was a deposition rather than taken in an evidentiary hearing on a motion and/or in a jury trial.

The state filed a motion to have the record supplemented and for an extension of time in which to file its brief. On the basis of the state's motion and our own examination of the record, we concluded the transcript contained in the record, erroneously stated to be testimony taken on March 13 and 14, 1989, was actually a combination of the evidence taken on March 9, 1989 on the motion to quash and of the hearing on the merits held on March 13 and 14, 1989.
Based on the state's motion and our own examination of the record we ordered the record supplemented by March 19, 1990. The court reporter requested and the trial judge improperly granted an extension to March 23, 1990 for her to comply with our order. Notwithstanding the extension, the court reporter did not deliver the additional eleven pages of the transcript to the clerk until March 26, 1990.
A portion of our order directed the clerk to supplement the missing exhibits, S-2, S-3 and S-5 (magazines introduced by the state on the trial) and D-4 through D-7 (video tapes identified by the defendant). From the supplemental record, which contained a stipulation between the state and the defendant, we note that these exhibits D-4 through D-7 were never actually introduced in evidence. Additionally, the clerk of court informed us that he does not have S-2, S-3 and S-5 and can only speculate as to what has happened to the exhibits.
The only exhibits of the state which are in the record and considered by us are:
S-1 _ July 1988 issue of the magazine "Odessy"
S-4 _ The magazine "3 Way Cum".
The other three are not presently contained in the record; nor are they identifiable from the record.
[4] See footnote 2.